**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| MOSES BROWN, on behalf of himself and all similarly situated individuals,<br><br>    Plaintiff,<br><br>v.<br><br>REFUSE MATERIALS, INC. and DONALD POPE, II,<br><br>    Defendants | Civil No.7:13-cv-37 (HL) |

## SECOND JOINT MOTION TO APPROVE SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Moses Brown and opt-in plaintiffs Ronnie Stanley, Luciano Cibrian, and William McAlpin (collectively referred to as "Plaintiffs") and Defendants Refuse Materials, Inc. ("RMI"), and Donald Pope, II. ("Pope") (Pope and RMI collectively referred to as "Defendants") (Plaintiffs and Defendants collectively referred to as the "Parties") jointly request that the Court enter the Consent Order Approving Settlement and Dismissing the Action with Prejudice, attached as Exhibit A, approving the settlement of Plaintiffs' Fair Labor Standards

Act ("FLSA") claims in the above-referenced case.[1] The Parties agree that the proposed settlement should not include a general release of claims and respectfully request that the Court approve the settlement affirming that the settlement serves only to extinguish Plaintiffs' FLSA claims. Additionally, the Parties request that the Court approve the settlement as not having any confidentiality requirement, irrespective of any contrary language in the proposed Settlement Agreement ("Agreement")[2].

With respect to opt-in plaintiff Gregory Johnson, the Parties request that his claims be dismissed without prejudice.  In support of this Motion, the parties jointly state as follows:

### A.    SETTLEMENT OF FLSA CLAIMS IN THE ELEVENTH CIRCUIT

In the Eleventh Circuit, there are two ways in which claims under the FLSA may be settled and released by employees.  First, section 216(c) of the FLSA allows employees to settle and waive their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor.  *See*

---

[1] Two other individuals, Chris Doctor and Greg Johnson, filed their consent to join this conditionally certified collective action; however, through discovery it has been determined that neither of these individuals have any potential FLSA damages within the three years preceding their respective consent to join filings in this action. With respect to Chris Doctor, discovery revealed that he did not work for Defendant in the three years preceding his filing a consent to join this action. As to Johnson,  Defendants' records confirm that he only worked three (3) days for Defendant during the three years preceding his filing a consent to join this action and therefore does not have any potential unpaid overtime.

[2] (Doc. 37-2).

29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).  Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the District Court with a proposed settlement and the District Court enters a stipulated judgment approving the fairness of the settlement.  *Id.*  In addressing the circumstances justifying court approval of FLSA settlements in the litigation context, the Eleventh Circuit has stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the District Court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

> **B.  THE PARTIES' SETTLEMENT AGREEMENT IS A FAIR AND REASONABLE RESOLUTION OF THE BONA FIDE DISPUTES BETWEEN THE PARTIES**

Following good faith, arms-length negotiations the Parties have reached a settlement of all claims.  Due to the uncertainties of litigation, disputed facts

regarding, *inter alia*, whether Plaintiffs were subject to the motor carrier exemption ("MCE") to the FLSA, Plaintiffs' hours worked, the applicability of the small vehicle exception to the MCE to some of Plaintiff Brown's weeks of employment, the availability of liquidated damages, whether a two or three year statute of limitations would apply to Plaintiffs' claims, and the benefit to the Parties in avoiding the expense and time associated with further litigation, the Parties have agreed to settle this matter.

The proposed settlement arises out of an FLSA conditionally certified collective action brought by Plaintiffs against their former employer, RMI, which was adversarial in nature. During the litigation and settlement of this action, Plaintiffs were represented by experienced counsel. As set forth above, the Parties agree that the instant action involves heavily disputed issues regarding, among other things:

> (1) Whether Plaintiffs were subject to the motor carrier exemption ("MCE") to the FLSA;

> (2) Plaintiffs' hours worked;

> (3) The applicability of the small vehicle exception to the MCE to some of Plaintiff Brown's weeks of employment;

> (4) The availability of liquidated damages; and

(5) Whether a two or three year statute of limitations would
apply to Plaintiffs' claims

The Parties further agree that the settlement negotiated and reached by the Parties reflects a reasonable compromise of the disputed issues.  Plaintiffs and their counsel discussed Plaintiffs' regular and overtime hours and pay rate and formulated proposed settlement figures.  The Parties engaged in settlement discussions, based upon their independent valuations of the case.  The Parties, through their attorneys, voluntarily agreed to the terms of their settlement during negotiations. Plaintiff Brown and a representative of Defendants have signed the Settlement Agreement and Release setting forth the terms of the settlement.

In this case, Plaintiffs were paid per day or per job pay for completing and performing commercial floor installation and remodeling projects in numerous states. Defendants maintained job records for Plaintiffs that allowed the Parties to reach what the Parties determined is a close approximation of the number of hours worked by Plaintiffs.

On January 15, 2014, the Court requested that the Parties provide additional information regarding the proposed settlement. Per the Court's directive, the Parties address the Court's inquiries for additional information as follows:

**1.   The amount of damages that Plaintiff Moses Brown as well as the opt-in plaintiffs originally claimed to be entitled to, with the monetary figures delineated for each individual plaintiff. The number of hours the Plaintiffs worked for which they allege they have not been adequately compensated, as well as the salary or hourly wage at which Plaintiffs allege they should have been paid, with both the hours and wages delineated for each individual plaintiff.**

    **a.   Moses Brown**

On January 29, 2013, Brown retained undersigned counsel and the law firm of Barrett & Farahany, LLP (hereinafter the "Firm") to represent him to prosecute alleged violations of the Fair Labor Standards Act ("FLSA") by his former employer, Defendant RMI. As a condition to Plaintiff's counsel agreeing to represent Plaintiff, Brown entered into a contract for services with the Firm. (Exhibit B – Fee Agreement). Pursuant to the Fee Agreement, in pertinent part, Plaintiff agreed to pay a legal fee of 40% of any recovery procured on his behalf, or the amount paid by the Defendant for attorney's fees based on counsel's time in the case, whichever is greater. *Id*. Subject to the Fee Agreement, if Plaintiff did not receive a recovery, Plaintiff's counsel would not receive any fee. *Id*. Under the Fee Agreement, Plaintiff is responsible for the reimbursement of litigation costs incurred by the firm on his behalf. *Id*. Due to a running statute of limitations issue, Plaintiff's counsel also assumed the responsibility of having to file and proceed with litigation

of Plaintiff's FLSA claims within a very short time frame, subject to a pre-suit investigation of such claims to ensure the claims were well grounded in fact and law.

Following execution of the Fee Agreement, Plaintiff's counsel immediately began working on Plaintiff's case. On February 26, 2013, following communications with Defendant's counsel in which Defendant failed to agree to toll the statute of limitations for the Parties to discuss resolution, Plaintiff's counsel filed suit on behalf of Brown's, and those similarly situated to him, assuming additional risk of litigation, including the potential that Plaintiff's action would require substantial investment of hours over a prolonged period of time and not result in a fee.

Prior to filing the Complaint, Plaintiff calculated that he worked a total of 3,256 overtime hours. In particular, Brown alleged that he worked 44 hours of overtime in 74 different weeks in the three years preceding February 18, 2013. Based on his calculations, Brown alleged that he was owed $23,019 in unpaid overtime and an equal amount in liquidated damages.[3] The parties have never disputed that, in Plaintiffs' best case scenario, they could only receive their half-time rate for unpaid overtime hours as they were paid on a per-job or per day basis which provided their straight time for all hours worked. See 29 C.F.R. ¶ 778.112 (providing

---

[3] Brown alleged the following calculation: (Average weekly pay of $1188 (divided) by 84 hours = $14.14 Reg. Rate (multiplied) by 1.5 = $21.21 Overtime Rate (minus) Reg. Rate = $7.07 half time rate owed for all overtime hours (multiplied) by 3,256 overtime hours= $23,019 in unpaid overtime).

that if an employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek).

Following close to a year of litigation, the Parties agreed to mediation of this action. At the outset of the Parties' mediation, Defendants provided Plaintiff's counsel with a highly detailed accounting of the number of weeks, days and hours Brown worked during the two years preceding the filing of his Complaint in this action, along with a detailed account of the number of weeks and days Brown worked in 2010. Upon review of Defendants' summary, Plaintiff determined that the figures accurately represented Brown's weeks and hours worked and the summary served as the guidepost to negotiate a settlement of Brown's claims. Defendants' records show that Brown had $19,405.32 in maximum potential overtime for 2011 and 2012 combined. For 2010, Defendants' records show that there were only seven (7) weeks in which Brown worked four (4) or more days and during 2010 Brown's regular rate and overtime rate was substantially lower than 2011 and 2012. Based on

Defendants' records for 2010, Brown maximum potential overtime was approximately $1050.00.

At mediation, the Parties negotiated the settlement of this action in good faith and at arms-length with the aid of Lee Parks, a highly skilled and experienced mediator and litigator. Prior to mediation, Defendants' offer was zero.

As set forth above, throughout the litigation and mediation of this action the Parties vigorously disagreed on, *inter alia*:

(1) Whether Plaintiffs were subject to the motor carrier exemption ("MCE") to the FLSA;

(2) Plaintiffs' hours worked;

(3) The applicability of the small vehicle exception to the MCE to some of Plaintiff Brown's weeks of employment;

(4) The availability of liquidated damages; and

(5) Whether a two or three year statute of limitations would apply to Plaintiffs' claims

A finding that Plaintiffs qualified for the motor carrier exemption would bar recovery of overtime for any weeks in which Plaintiffs did not qualify for the small vehicle exception to the exemption. Defendants firmly contended that the motor carrier exemption was applicable to Plaintiffs' employment and planned on moving for summary judgment on this issue. Defendants also adamantly claimed that the

small vehicle exception to the motor carrier exemption would not have applied to many, if not all, of Brown's weeks of employment. Defendants provided evidence supporting their position on the exemption as well as the inapplicability of the small vehicle exception to weeks of employment. The speculative availability of liquidated damages and whether a three year statute of limitations would apply to Plaintiffs' claims also weighed into the Parties' valuation of settlement.

The following scenarios provide a range of the possible recovery Plaintiff could have received if he had proceeded with his claims in litigation.

Plaintiff and his counsel would recover **zero** if Plaintiff was found to be exempt from overtime at summary judgment, or at trial to the extent the small vehicle exception did not apply to some of Plaintiff's weeks of employment.

Plaintiff's maximum recovery would be approximately $19,405.32, assuming he was found to be non-exempt with a two-year statute of limitations and no liquidated damages.

Plaintiff's maximum recovery would be approximately $20,455.32, assuming he was found to be non-exempt with a three-year statute of limitations and no liquidated damages.

Plaintiff's maximum recovery would be approximately $38,810.64, assuming he was found to be non-exempt with a two-year statute of limitations and with liquidated damages.

Plaintiff's maximum recovery would be approximately $40,910.64, assuming he was found to be non-exempt with a three-year statute of limitations and with liquidated damages.

Plaintiff's recovery would be above zero and below $40,910.64 if he was found to be exempt coupled with a finding that he qualified for the small vehicle exception for some number of his weeks of employment.

The proposed settlement reached by the Parties provides Brown with $25,000.00, less applicable wage withholdings on 50% of that amount. In other words, Brown will receive over 20% more than his maximum potential unpaid overtime recovery for a three-year statute of limitations. Brown is also receiving an additional $15,000 to settle his battery claim[4].

---

[4] Defendants hotly dispute Plaintiff's battery and FLSA retaliation claims and assign no more than nuisance value to such claims. Plaintiff's battery and FLSA retaliation claims are largely interdependent given that Plaintiff would have to show that Defendant Pope's defamation counterclaim, which stems from the contention that Brown falsely accused Pope of a battery, had no basis in fact or law for Plaintiff to prevail on his retaliation claim. There is video evidence of the alleged battery incident upon which the Parties relied in valuing the battery and retaliation claims.

### b. Opt-in plaintiffs Ronnie Stanley, William Ross McAlpin, and Gregory Johnson

During discovery, and months before the mediation, Defendants provided records showing the number of days worked by the opt-in plaintiffs and the amount they were paid for such work. Defendants are certain that even if they did not prevail on the MCE that that the small vehicle exception would not apply to any of the handful of weeks collectively worked by the opt-in plaintiffs.

**i**.   **Ronnie Stanley** – Stanley worked for Defendant RMI for a total of nine (9) days in September 2012, i.e. he worked overtime in zero, one or two weeks.[5] Prior to the mediation, Stanley provided authorization for his claims to be settled at or above $50 and did not provide a specific accounting of the overtime hours he worked in his 9 days employment in which he could have worked overtime. Given that Stanley only worked for Defendant RMI for nine days in which he could have accrued overtime, the Parties are certain that $200 is a fair and reasonable amount to be paid for his alleged overtime work during such pay periods in light of the risks of litigation.

---

[5] Stanley received $2,000 in pay for his nine (9) days of work.

    **ii.**    **Luciano Cibrian** – Cibrian only worked for Defendant RMI during the weeks of September 3 – 9, and 10 – 16, 2010, for a total of 12 days.[6] Prior to the mediation, Cibrian provided authorization (through his wife as Cibrian speaks limited English) for his claims to be settled at or above $100 and did not provide a specific accounting of the overtime hours he worked in his two weeks of employment. Given that Cibrian only worked for RMI for two weeks and that such weeks occurred outside the normal two year statute of limitations for FLSA claims, the Parties are certain that $200 is a fair and reasonable amount to be paid for his alleged overtime work during his two weeks of employment.

    **iii.**    **William Ross McAlpin** – McAlpin worked for Defendant RMI for a total of 13 days in September 2012.[7] Prior to and after the mediation, Plaintiff's counsel made repeated attempts to contact McAlpin to discuss settlement and his claims and has received no response.  Given that McAlpin worked for RMI for only 13 days, the Parties are certain that $200 is a fair and reasonable amount to be paid for his potential overtime work during his 13 days of employment.

    **iv.**    **Gregory Johnson** – Johnson worked for Defendant for a total of three (3) days in August 2012 and therefore is not receiving a settlement.

---

[6] Cibrian was paid $1500 for his 12 days of employment with Defendant RMI.

[7] McAlpin was paid $2150 for his 13 days of employment with Defendant RMI.

**3.   Whether the opt-in plaintiffs Ronnie Stanley, Luciano Cibrian, William McAlpin, and Gregory Johnson have been informed of this proposed settlement.**

As set forth above, opt-in plaintiffs Stanley and Cibrian provided authorization for the settlement of their claims in advance of the mediation. Attempts to reach to Johnson before the mediation were unsuccessful. Given that Johnson only worked for Defendant RMI for three days and thus apparently did not work overtime the Parties did not allocate a settlement for his alleged claim. Undersigned counsel made repeated unsuccessful attempts to reach McAlpin before and after the mediation. The Parties request that Johnson's claims be dismissed without prejudice.

**4.   Why the proposed settlement amount for Plaintiff Brown is so much greater than the proposed amounts for opt-in plaintiffs Stanley, Cibrian, and McAlpin, as well as why Johnson is paid nothing under the proposed settlement.**

Sec. B (1), *supra*, provides the information requested.

**5.   Why the motion to approve the settlement should not be denied since the settlement contains a general clause that would release Defendants from more than the FLSA claims.**

The inclusion of a general release in the final settlement agreement was inadvertent. The parties agree that the proposed settlement should not include a general release of claims and respectfully request that the Court approve the

settlement affirming that the settlement serves only to extinguish Plaintiffs' FLSA claims.

**6.  Why the motion to approve the settlement should not be denied since the settlement contains a confidentiality clause.**

The portions of the Agreement which the Court identifies as a "confidentiality clause" (Doc. 37-2,  at ¶¶ 5 & 6(D)) require the parties to refrain from disparaging each other (*Id.*, at ¶ 5) and to maintain confidentiality of the settlement and its terms until such time as the Court approves the settlement (*Id.*, at ¶ 6). While the Parties are not aware of any prohibition against non-disparagement clauses in FLSA settlement agreements, the Parties hereby respectfully request that the Court approve the agreement striking the non-disparaging clause. Similarly, the Parties respectfully request that the Court approve the Agreement striking ¶ 6 and the Parties agree that the settlement and terms thereof are not and shall not be confidential.

**7.  Whether the attorney's fees for Plaintiffs' counsel were negotiated separately from the settlement of the Plaintiffs' claims and without regard for what the Plaintiffs were paid.**

As noted above, the Parties negotiated the settlement of this action in good faith and at arms-length with the aid of a highly skilled and experienced mediator and litigator. Prior to mediation, Defendants' offer was zero. At the mediation, while the parties, at certain times, conveyed demands and offers for Plaintiff

Brown's claims via single figures, Brown and his counsel made such demands fully cognizant of the amount needed to account for the calculated value of Brown's claims and counsel's reasonable attorney's fees.  The amounts negotiated for the opt-in plaintiffs were negotiated separately from and without regard to Plaintiff's attorney's fees.

**8.  An explanation of the attorney's fees including a break-down of the number of hours Plaintiffs' counsel worked on this matter, the tasks performed, and the hourly rate at which counsel seeks to be paid. Counsel should provide the Court with an explanation for why the hourly rate and the number of hours worked are reasonable.**

As set forth above, on January 29, 2013, Plaintiff retained undersigned counsel and the law firm of Barrett & Farahany, LLP (hereinafter the "Firm") to represent him to prosecute alleged violations of the Fair Labor Standards Act ("FLSA") by his former employer, Defendant RMI. As a condition to Plaintiff's counsel agreeing to represent Plaintiff, Brown entered into a contract for services with the Firm.   (Exhibit B). Pursuant to the Fee Agreement, in pertinent part, Plaintiff agreed to pay a legal fee of 40% of any recovery procured on his behalf, or the amount paid by the Defendant for attorney's fees based on counsel's time in the case, whichever is greater. *Id*. Subject to the Fee Agreement, if Plaintiff did not receive a recovery, Plaintiff's counsel would not receive any fee. *Id*. Under the Fee Agreement, Plaintiff is responsible for the reimbursement of litigation costs incurred

by the firm on his behalf. *Id*. Due to a running statute of limitations issue, Plaintiff's counsel also assumed the responsibility of having to file and proceed with litigation of Plaintiff's FLSA claims within a very short time frame, subject to a pre-suit investigation of such claims to ensure the claims were well grounded in fact and law.

Following execution of the Fee Agreement, Plaintiff's counsel immediately began working on Plaintiff's case. On February 26, 2013, following communications with Defendant's counsel in which Defendant failed to agree to toll the statute of limitations for the Parties to discuss resolution, Plaintiff's counsel filed suit on behalf of Brown's, and those similarly situated to him, assuming additional risk of litigation, including the potential that Plaintiff's action would require substantial investment of hours over a prolonged period of time and not result in a fee. The litigation of this action lasted close to a year and required a substantial amount of investment of time by Plaintiffs' counsel.

The Parties' proposed settlement provides Plaintiffs' counsel with $39,935.76 in attorney's fees and reimbursement for $864.24 in litigation costs incurred on Plaintiffs' behalf.

As of January 20, 2014, Plaintiffs' counsel had accrued $44,101.50 in attorney's fees based on counsels' time in the case at their respective hourly rates. Plaintiff's lead counsel, V. Severin Roberts, has an hourly rate of $300.00 and

handled the vast majority of work performed on Plaintiffs' behalf in this action.[8] Two other attorneys, Amanda Farahany and Abigail Larimer, incurred time in the case in assisting with the mediation of this action at the hourly rates of $450.00 (Attorney Farahany) and $250.00 (Attorney Larimer). In total, Plaintiffs' counsel and support staff have performed 152.43 hours of billable time in this case. See (Exhibit C – Time Records).  Attorney Roberts performed 124 hours of billable time in the case and Attorneys Farahany and Larimar incurred 10.20 (Farahany) and 8.00 (Larimer) hours in the case. *Id*.  "Exhibit C" further provides the Court with a detailed breakdown of the tasks performed in this case and the amount of time spent performing such tasks.

Attorney Roberts is a 2009 graduate of Tulane University Law School. On August 8, 2011, the District Court for the Northern District of Georgia approved Attorney Roberts' requested hourly rate of $250.00, in ruling on a fee petition submitted in *Goodridge v. Astrue*, 1:07-cv-1919-RLV, at [Doc. 101]. In approving Attorney Roberts' hourly rate, as of August 2011, the Court opined that the $250 hourly rate was "reasonable and consistent with the rates charged by attorneys of comparable experience in the Atlanta area." *Id*. at 7-8. Since that time, Attorney

---

[8] Attorney Roberts' hourly rate was increased from $250.00 to $300.00 in or around April 17, 2013.

Roberts has served as counsel of record in more than 50 cases in the N.D. of Georgia, including more than 43 actions with FLSA claims. Additionally, the N.D. of Georgia implicitly approved of Attorney Roberts' current $300 rate in approving an FLSA settlement in *Griggs v. Diversitech Corp.*, Civil Action No. 1:13-cv-1739-SCJ (N.D. Ga. 2013), in which the court requested and reviewed Attorney Roberts' hours and rate information as part of the court's consideration of the settlement proffered in that case. Attorney Farahany is the managing partner of Barrett & Farahany, LLP and is widely recognized in Georgia as a premier employment litigator.  Attorney Larimer is a 2008 graduate of Emory University Law School and has served as lead counsel in numerous employment and FLSA cases while working as an associate at Barrett & Farahany.

For the foregoing reasons, the Parties jointly and respectfully request that the Court approve the settlement agreement of the Parties, and, upon approval of the settlement, that the Court dismiss the action with prejudice. Again, with respect to opt-in Gregory Johnson the Parties request that his claims be dismissed without prejudice. To the extent the Court has any additional inquiries or requires more information in consideration of this motion, the Parties respectfully request that the Court hold a hearing on the matter. The Parties further request that, to the extent the

Court holds a hearing the Parties be permitted to attend by telephone in the interest of efficiency and to avoid the imposition of burden on counsel.[9]

Respectfully submitted, this 23rd day of January, 2014.

| BARRETT & FARAHANY, LLP | Charles E. Cox, Jr., LLC |
|---|---|
| /s/  V. Severin Roberts<br>Amanda Farahany<br>V. Severin Roberts<br>Georgia Bar No. 940504<br>1100 Peachtree Street N.E.<br>Suite 500<br>Atlanta, Georgia 30309<br>(404) 214-0120<br>(404) 214-0125 (Facsimile)<br><br>Attorneys for Plaintiff | /s/ Charles E. Cox, Jr.<br>Charles E. Cox, Jr.<br>Georgia Bar No. 192305<br>P.O. Box 67<br>Macon, GA  31202-0067<br>(478) 757-2990 (telephone)<br>(478) 757-2991 (facsimile)<br>charles@cecoxjr.com<br><br>Attorney for Defendants |

---

[9] Plaintiffs' counsels are located in Atlanta, Georgia, with their office located approximately 230 miles from the M.D. Ga. (Valdosta Division) Courthouse.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing <u>SECOND JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT PURSUANT TO THE FAIR LABOR STANDARDS ACT</u> with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 23rd day of January, 2014.

By:  <u>s/V. Severin Roberts</u>
V. Severin Roberts
Georgia Bar No. 940504

BARRETT & FARAHANY, LLP
1100 Peachtree Street, N.E.
Suite 500
Atlanta, Georgia 30309